UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v-

PASQUALE PARRELLO,

Defendant.

No. 16-cr-522 (RJS)
ORDER

---

RICHARD J. SULLIVAN, Circuit Judge:

Before the Court is Defendant Pasquale Parrello's counseled motion for a compassionate release under the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), in light of the COVID-19 pandemic and/or his underlying health conditions.  (Doc. No. 1784.)  For the reasons set forth below, Parrello's motion is DENIED.

## I.      Background

On August 1, 2016, a grand jury indicted Parrello and 45 codefendants on charges of racketeering conspiracy, in violation of 18 U.S.C. § 1962(b).  (Doc. No. 2.)  Pursuant to a plea agreement with the government, Parrello ultimately pleaded guilty to three counts of conspiracy to extort payment for gambling debts, in violation of 18 U.S.C. § 1951.  (Doc. No. 690.)  As part of those crimes, Parrello ordered associates to threaten debtors with physical injury or death when they failed to make prompt payments on their gambling debts.  (*See* Presentence Investigation Report ("PSR")  ¶¶ 13, 23, 37.)  On one occasion, Parrello instructed a coconspirator to "actually choke the [victim] and tell him 'Listen to me[:]  next time I'm not gonna stop choking."  (PSR ¶ 23.)  Another time, Parrello ordered that a victim's tires be

punctured with an ice pick, so that the coconspirators could "surround" the victim and induce

him to pay up.  (PSR ¶ 37.)

At the sentencing hearing held on September 7, 2017, the Court calculated Parrello's

Sentencing Guidelines range to be 70 to 87 months' imprisonment, based in part on Parrello's

leadership role in the violent extortions and his extensive criminal history.  (Sentencing Tr. at

16–17, 26, 28, 59.)  Although the Court carefully considered Parrello's age, health, and  strong

showing of family and community support as mitigating factors (*see id.* at 31, 36, 51–53), the

Court nevertheless concluded that a below-Guidelines sentence was not appropriate in light of

the "tremendous harm" wrought by Parrello's crimes, which involved explicit threats of "death

or physical harm."  (*Id.* at 54.)  The Court also noted that Parrello, who had already served an

88-month sentence for similar crimes of violence in connection with his role as a capo in the

Genovese Crime Family, chose in his advanced years "to return to a life . . . of crime and a life

of violence, a life that leads to jail and prison, and, in many cases, dying in prison."  (*Id.* at 56.)

The Court therefore concluded that, given the violent nature of the offenses, Parrello's history

and leadership role, and the need for deterrence, "anything less than" seven years'

imprisonment "would be wrong."  (*Id.* at 58.)  Parrello is currently incarcerated at FCI Fort Dix

and is scheduled to be released on July 22, 2022.  (Doc. No. 1791 ("Gov't Opp'n") at 6.)

On October 23, 2020, Parrello requested that the Bureau of Prisons ("BOP") release him

early in light of his medical conditions and the threat posed by the COVID-19 pandemic to at-

risk inmates.  (Doc. No. 1785-3.)  Although the BOP acknowledged that Parrello has prostate

cancer, chronic blood clotting problems, hypertension, and chronic pain, at least some of which

could increase Parrello's risk of severe complications were he to contract COVID-19, the BOP

nevertheless rejected his request, concluding that Parrello's medical conditions were "stable,"

and that his early release would endanger the community and "greatly minimize the severity of [Parrello's] offense." (*Id.*)

Parrello, through counsel, now moves the Court to reduce his sentence to time served pursuant to Section 603 of the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 1784.) In addition to the arguments previously made to the BOP concerning the current COVID-19 pandemic and his preexisting ailments, Parrello also notes that, on or about October 27, 2020, he tested positive for COVID-19; he further highlights his excellent prison record, which reflects that he has had no disciplinary infractions since his sentencing. (Doc. 1785 at 3 n.1, 23.) The government opposes Parrello's motion, arguing that the sentencing factors in 18 U.S.C. § 3553 weigh heavily against his release. (Gov't Opp'n at 8–9.) The government further reports that Parrello is currently housed in a unit where all inmates have been cleared of or recovered from the virus. (*Id.* at 6.)

## II.      Analysis

It is well-established that a court "may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Roberts*, No. 18-cr-528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020). Section 3582(c)(1)(A) provides one such exception, permitting a court to reduce a defendant's sentence where (1) "extraordinary and compelling reasons warrant such a reduction," and (2) such relief would be consistent with both the objectives of sentencing set forth in 18 U.S.C. § 3553(a) and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). A prisoner can bring a motion for this compassionate release once he has satisfied certain procedural requirements not at issue here. *See id.*

On the merits, Parrello maintains that the COVID-19 pandemic, alone and/or combined with his age (76 years old) and underlying health conditions, warrants a compassionate release. The Court respectfully disagrees.

Although the government concedes that Parrello's prostate cancer amounts to an "extraordinary and compelling" reason for release, that is by no means a forgone conclusion. *See United States v. Mungin*, No. 97-cr-1105(LAP), 2020 WL 2847927, at *3 (S.D.N.Y. June 2, 2020) (finding that an inmate with prostate cancer had not shown a compelling reason for early release). According to his medical record, Parrello's cancer is "low risk," and while it must be periodically monitored, it is not being actively treated. (Doc. No. 1791-1 at 291–92, 698.) Standing alone, this medical condition does not rise to an "extraordinary and compelling" reason justifying release.

Nor does the pandemic itself – without more – "present extraordinary and compelling circumstances warranting a compassionate release." *Musa v. United States*, No. 19-cv-9130 (RJS), 2020 WL 6873506, at *8 (S.D.N.Y. Nov. 23, 2020) (quoting *United States v. Felix*, No. 12-cr-322 (RJS), 2020 WL 4505622, at *2 (S.D.N.Y. Aug. 4, 2020) (collecting cases)). To be sure, as Parrello notes (Doc. No. 1785 at 7), some thoughtful judges in this district have reached the opposite conclusion. *See, e.g.*, *United States v. Pacheco*, No. 12-cr-408 (JMF), 2020 WL 4350257, at *1 (S.D.N.Y. July 29, 2020). But, at least on some level, the threat of the virus is common to every inmate – indeed, to every person in the United States. If every compassionate release case presents an "extraordinary" reason for release, the term loses its meaning. *See Extraordinary*, *New Oxford American Dictionary* (3d ed. 2010) ("very unusual or remarkable"). It thus matters whether an inmate has identified specific facts that increase his risk of suffering severe health consequences should he contract the coronavirus. *See Felix*,

2020 WL 4505622, at *2; *see also United States v. Brady*, No. S2 18-cr-316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) ("[C]ompassionate release motions amid the COVID-19 pandemic have required a fact-intensive inquiry made in the unique circumstances and context of each individual defendant." (internal quotation marks omitted)).

Here, Parrello's age, cancer diagnosis, and obesity certainly enhance the risks associated with contracting the virus that causes COVID-19. *See Older Adults*, Ctrs. For Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Jan. 20, 2020); *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#cancer (last visited Jan. 20, 2020). Moreover, the BOP's Fort Dix facility is confronting an outbreak, as recent reports reflect that 73 inmates currently have the virus. *COVID-19*, Fed. Bureau of Prisons https://www.bop.gov/coronavirus/ (last visited Jan. 24, 2020). But the government's submission reflects that Parrello has already contracted and apparently recovered from COVID-19, and while there remains at least some risk that Parrello could contract the virus again, reinfection is "rare." *See Reinfection with COVID-19*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited Jan. 20, 2020). And because it is uncontested that Parrello's current unit exclusively houses inmates whom the prison deems to be cleared of the virus, it appears that Parrello's risk of reinfection all but vanishes.

But even if Parrello could establish a compelling and extraordinary reason for early release, countervailing factors still counsel against the granting of release at this time. Before granting compassionate release, the Court must assess the § 3553(a) sentencing factors to

determine "whether those factors outweigh the 'extraordinary and compelling reasons"
warranting compassionate release, particularly whether compassionate release would
undermine the goals of the original sentence." *United States v. Ogarro*, No. 18-cr-373-9 (RJS),
2020 WL 5913312, at *2 (S.D.N.Y. May 13, 2020) (quoting *United States v. Ebbers*, No. 02-
cr-1144 (VEC), 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020)).  Those sentencing factors
include (1) "the nature and circumstances of the offense," (2) "the need for the sentence
imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide
just punishment for the offense," and (3) "the need for the sentence imposed . . . to afford
adequate deterrence to criminal conduct."  18 U.S.C. § 3553(a).

Here, the § 3553(a) factors strongly disfavor the granting of compassionate release.  For
starters, the seriousness of Parrello's crimes cannot be overstated.  He ordered his followers to
threaten victims with death.  As the Court noted at sentencing, such crimes cause "tremendous
harm" both to victims and "to society at large." (Sentencing Tr. at 54.)  The fact that Parrello's
prior terms of incarceration did not deter him from returning to a life of violent, organized
crime – as a senior citizen, no less – further supports the need for a firm sentence even now.
Finally, Parrello's leadership role – effectively a resumption of his role as the acting capo of
the Parrello crew in the Genovese Crime Family (PSR ¶ 110) – justifies a continued stiff
sentence in this case.  Under these circumstances, reducing Parrello's sentence by a year and a
half would undermine the important interests identified by the Court during the original
sentencing proceeding.  (Sentencing Tr. at 54–59); *see also United States v. Sanchez*, No. 08-
cr-789 (RJS), 2020 WL 4742916, at *3 (S.D.N.Y. June 17, 2020).  Accordingly, though the
Court sympathizes with Parrello's health conditions and congratulates him on his spotless

prison record, it continues to believe that "anything less than" than seven years' imprisonment "would be wrong."  (Sentencing Tr. at 58.)

### III.      Conclusion

For the reasons set forth above, Parrello's motion for compassionate release is DENIED, without prejudice to renewal in the event of changed circumstances. The Clerk of Court is respectfully directed to terminate the motion pending at document number 1784.

SO ORDERED.

Dated:       January 25, 2021
             New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

7